and the Consolidated Cases. Mr. Clement. Mr. Chief Justice, and may it please the Court, Respondents claim that arbitration agreements providing for individual arbitration that would otherwise be enforceable under the FAA are nonetheless invalid by operation of another Federal statute.  implementation of the FAA's arbitration agreements. the FAA will only yield in the face of a contrary congressional command and the tie goes to arbitration. Applying those principles to Section 7 of the NLRA, the result is clear that the FAA should not yield. Is that a concession that this is a concerted action? Well, I don't know that it is a concession that this is a concerted action. I mean, if we adopted that, I don't know that it would be a concession for the opinion of the Court, wouldn't we have to say, we assume that this is concerted action under the NLRA Section 7, but the FAA prevails? Well, I think what you would say, Justice Kennedy, is the concerted activity that's protected by Section 7 at most gets them to the threshold of the courthouse. But Section 7 is directed to the workplace, not the courthouse. And what it protects is their right in the workplace to decide they want to initiate action. Then once they get to the courthouse. Ginsburg. Mr. Clement, Mr. Clement, the courthouse is not at issue here, as I understand it. These employees say, we don't object to arbitration, but what we do object to is the one-on-one, the employee against the employer. And the driving force of the NLRA is that there was an imbalance, that there was no true liberty of contract. So that's why they said in the NLRA concerted activity is to be protected against employee-employer interference. That's right, Justice Ginsburg. But it's collective action by the employees in the workplace. And then once they get to their forum, be it the board itself. What does the NLRA say in the workplace? It says for the mutual benefit, mutual benefit and protection, mutual aid. Right. It doesn't say in the workplace. I'm just saying that's where it's directed. And in every context. I'm sorry. Well, why is it directed there if it doesn't say that? I mean, in fact, we said the opposite in EASTEC. We said employees seeking to improve working conditions through resort to administrative and judicial forums, essentially the legislatures and the courthouses and the agencies, is covered by the Mutual Aid or Protection Clause. So, you know, in EASTEC, we came up against this question, said it was very clear that the Mutual Aid or Protection Clause swept further than the workplace itself. It, as long as the ultimate goals were workplace-related, whether you took those goals to the, you know, activity in the workplace or in the agencies or in the courts, it didn't matter at all. It was all covered by Section 7. That's right, Justice Kagan, but the key words there are resort to. There's no right in Section 7 or anywhere else in the NLRA to proceed as a class once you get there. And so the issue is that, I mean, at least to me, and you can explain this, you started out saying this is an arbitration case. I don't know that it is. I thought these contracts would forbid joint action, which could be just two people joining a case, in judicial as well as arbitration forms. Regardless, I'm worried about what you're saying is overturning labor law that goes back to, for FDR at least, the entire heart of the New Deal. What we have here is a statute, two of them, Norris LaGuardia, the NLRA, which for years have been interpreted the way Justice Kagan said. They say that they protect the joint, joining together. Those are the words, joining together. Those are the words of our interpretation of you could have two workers to seek to improve working conditions through resort to administrative and judicial forms, okay? So Cardozo said, we exclude cases from arbitration. We exclude cases, that's the Savings Clause, where the contract is in contravention of a statute. The statute protects the worker when two workers join together to go into a judicial or administrative forum for the purpose of improving working conditions, and the employers here all said, we will employ you only if you promise not to do that, okay? That's the argument against you. I want to be sure that I didn't see, you know, Concepcion, I've read it, too, we all have, but I haven't seen a way that you can, in fact, win the case, which you certainly want to do, without undermining and changing radically what has gone back to the New Deal, that is, the interpretation of Norris LaGuardia and the NLRA. So I will stop. I would like to listen, and I want to hear what your answer to that is. So the short answer, Justice Breyer, and then I'd like to try to get out a longer answer, but the short answer is that for 77 years, the Board did not find anything incompatible about Section 7 and bilateral arbitration agreements, and that includes in 2010 when the NLRB general counsel looked at this precise issue. Now, the longer answer is, from the very beginning, the most that has been protected is the resort to the forum, and then when you get there, you're subject to the rules of the forum. So, for example, if an atypical worker decides that he wants to bring a class action on behalf of a handful of fellow employees, he has the right to resort to the courts. But when he gets there, if he's confronted by an employer that says, wait a second, you don't satisfy numerosity, you don't satisfy typicality, then the employer doesn't commit an unfair labor practice by raising that argument. Breyer, of course not, but are you now conceding that in these contracts in front of us that they do not forbid two workers or three or four from going together, approaching a judicial forum, asking the judge to hear their case, or an arbitration forum? And, of course, if it violates some rule of civil procedure other than that, it will be thrown out. Are you conceding that that's the issue? And then I don't know which one it violated, but nonetheless. Well, the issue is, just as the employer can raise a numerosity defense or a typicality defense, the employer can raise a defense that you agreed to arbitrate this claim. And that should be enforceable. And then when you get to the arbitration forum, just as you take Rule 23 as a given, you should take the rules of the arbitration forum as a given. And this is the way it applies in every other context. Ginsburg. Mr. Clement, do you recognize that this kind of contract, this — there is no true bargaining. It's the employer says you want to work here, you sign this. It's what was called a yellow dog contract. This has all the essential features of the yellow dog contract. That is, there is no true liberty to contract on the part of the employee. And that's what Norris LaGuardia wanted to exclude. I have two responses to that, Justice Ginsburg. First, the board doesn't even take it that far. They agree that arbitration agreements, as long as what's at issue is an individual claim, are perfectly fine and perfectly valid. So this isn't a principle that says that the employee's position is so weak they can't agree to arbitrate at all. The second part of that is, I suppose that's one way of asking the question in this case, is a bilateral arbitration agreement, something that has been protected by the FAA since 1925, is that really, because all it seeks to do is to preserve what this Court on three occasions has referred to as a fundamental attribute of arbitration, is that really a yellow dog contract? Ms. Sikorski. Isn't it so that the FAA, in its inception, was meant to deal with bargains between merchants, bargains between merchants who said the arbitration forum is much less expensive, so we want to go there rather than the Court, but it was commercial contracts that triggered the FAA? Justice Ginsburg, this Court crossed that bridge in Circuit City. And what I find so remarkable is that in Circuit City, nobody, not the AFL-CIO or anyone else, was up in front of this Court saying, oh, by the way, you're sort of wasting your time here because the NLRA in Section 7 is going to strictly prohibit the ability to enter bilateral arbitration. Sotomayor But that's not true, Mr. Clementi. Your adversaries are taking the position, logically so, that if a union wants to enter arbitration, we've already heard the Court speak on this issue, the union can substitute arbitration for judicial forum, because then the collective body of workers has acted together and contracted together on an equal footing with the employer for that term. Now, the problem that I have with this bilateral issue is you seem to be thinking that somehow the NLRB can't invalidate a contractual term, just as State law conceals concepts like for-fraud, duress, the normal contract terms that invalidate contracts. Section 7 and Section 8 of the NLRB basically declare a contract illegal if it does a certain thing, and that is if it stops an individual from concerted activities. So what that starts with is this contract is no longer valid. There's nothing to take to the courthouse. So if what it is doing is stopping you from taking activity that you're legally entitled to take. Clementi So a couple of things, Justice Sotomayor. First of all, I'd have to double-check, but I'm pretty sure the employer in Circuit City was not a union employee. And in all events, I think that the point is that Circuit City said that's my point, which is to say that if, in fact, employment agreements were covered by the FAA, but if they were bilateral, they would actually be unlawful under the NLRA, boy, would that have been a useful thing to tell the Court in Circuit City. But no dog barked at that point. In the Gilner case, where you were dealing with an employment issue, a DEA, and a collective action provision, the AFL-CIO filed its own amicus brief to raise a different issue that hadn't been briefed, the issue the Court eventually decided in Circuit City. But they didn't say, oh, my goodness, what are we doing here? Section 7 of the NLRA is directly on point. And that's because the NLRA in no other context extends beyond the workplace to dictate the rules of the forum. And the best example is the Board itself. Of course Section 7 protects the rights of employees to file an unfair labor practice before the Board. And of course they can collaborate with their coworkers to file the unfair labor practice. But guess what? When they get before the Board, the Board doesn't have class action procedures. Now, that doesn't create some huge problem. That just reflects that, of course, you get to resort to the courts, the arbitral forum, or the regulatory forum. But when you get there, you're subject to the rules of the forum. Kennedy, let's say two cases. One is a case where two employees get together and seek arbitration. The other is when one employee seeks arbitration but makes it a class action. Is one case any easier than the other, or do we decide both on the same principle? I think ultimately you decide both on the same principle. I think the way to think about that, though, is that Section 7 requires two things. It requires concerted activity for mutual aid and protection. Now, if you have two individuals that are trying to collaborate, that's concerted activity. And then it has to be for mutual activity. So if a couple of workers are talking off the shop and are helping one guy get additional alimony, I mean, that's not for mutual aid and protection. It might be concerted activity, but it's not the latter. Suppose it's for their wages. If it's for their wages, I think if you have a couple of folks that are doing it in the workplace, that's concerted activity. They get to the forum and they get whatever rights to proceed concertedly that are available in the forum. If it's class action, it's arguably harder, because you can file a class action  a class. You mean it's harder for the employer to prevail or for the employee? I'm sorry. It's harder for the employee to prove that it's concerted activity. But I don't think, as I answer the question. But your case is really my first case, is it not? This is not really a class suit in its origins, at least. Or am I wrong? Or am I wrong? Because there's Murphy Oil as well. Yeah. There's three cases here, and I think that, you know, two of them might be more like the class action case and one might be like the concerted activity case. I'm obviously representing all three of the employers. But that's not why I'm telling you that you don't have to make a distinction between the two. It's really because I think the way to think about the Section 7 right is it gets you to the courthouse, it gets you to the board, it gets you to the arbitrator. But once you're there, you're subject to the rules. Kagan. What about Section 102 and 103 of the Norris-LaGuardia Act? Because let's take Justice Kennedy's example. You have three guys and they all join claims, so we don't have the question about a class action and whether that's concerted. This is clearly concerted. And they're seeking higher wages, so it's clearly for their mutual aid and protection. So they're covered under Section 7. And then Section 102 of the NLGA basically just repeats Section 7. And then Section 103 says, and I'm quoting now, any undertaking or promise in conflict with essentially the language in Section 7 shall not be enforceable in any court. So what about that? Any undertaking or promise in conflict with Section 7 rights, in other words, any waiver of Section 7 rights, shall not be enforceable in any court. Well, that assumes the conclusion, with all respect, Justice Kagan, which is do you have to? The only thing it assumed was that this was covered under Section 7. And you yourself said this is concerted and it's for mutual aid and protection. And once that's true, this language of Norris LaGuardia comes in and says, forget about a waiver, because an undertaking in conflict with Section 7 shall not be enforceable. I don't think that that's the way to read the statute. And I think the reason is that this isn't, and I don't think the way to see a traditional bilateral arbitration agreement is as a waiver of a Section 7 right or an NLGA right. It is just an effort by the employer and the employee to agree to set the rules for the forum of arbitration when you get there. And there's nothing sinister about leaving it to bilateral arbitration. Well, it's an agreement, but it's an agreement to waive a Section 7 right. I mean, that's what it is. It's saying I used to have this right for concerted activity and now I don't. With all due respect, I think that assumes the conclusion. You didn't have a freestanding right to proceed with class arbitration in an arbitral forum. You had a right to go to whatever forum and abide by those rules, and one of the rules in the arbitral forum is no class actions. If I could reserve the remainder of my time. Roberts. Thank you, Mr. Clement. Mr. Wall. Mr. Chief Justice, and may it please the Court, I'd just like to highlight one point in what Mr. Clement said. No one questions that the FLSA permits the employees here to forego collective actions and arbitrate their FLSA claims. In giving employees the right to act in concert, the NLRA does not then extend to concerted activities that they have validly agreed to waive under other Federal statutes like the FLSA and the FAA. And for decades, through the 2010 General Counsel memo and until D.R. Horton five years ago, the Board recognized as much. Section 7 and 8 were understood as protecting employees from dismissal or retaliation. What about the reality? I think we have in one of these cases in Ernst & Young, the individual claim is $1,800. To proceed alone in the arbitral forum will cost much more than any potential recovery for one. That's why this is truly a situation where there is strength in numbers, and that was the core idea of the NLRA. There is strength in numbers. We have to protect the individual worker from being in a situation where he can't protect his rights. So, Justice Ginsburg, with all respect, there are provisions in the arbitration agreements here, and they differ, that allow for payments of costs and fees. But even if you thought that it just resulted in an argument that the employees would be practically unable to vindicate their claims, those are exactly the kind of arguments this Court rejected in Italian Colors, it rejected in Concepcion, and said, bilateral arbitration agreements are enforceable under the plain terms of section 2 of the FAA. Sotomayor, we didn't have in those cases a third or raised a third statutory provision that protects a particular action and any type of action in mutual aid or concerted activity like the NLRB or the Norris LaGuardia Act. But putting that aside, I'm not sure that the FAA is now a rule of statutory construction. Basically, what you're saying is the FAA trumps the NLRB's concerted activity statement and its broadness, that somehow it stops you, say, at the courtroom door, so does your colleague. I don't know how you do that when at least one of these agreements, if not all three, have confidentiality agreements that prohibit the employers from talking to other employers, from combining with other employers. If it does that and it stops them from going to the courtroom door, is that an unfair labor act? So, Justice Sotomayor, there's a lot there, and let me see if I can unpack a handful of things. A half-dozen times, this Court has faced a claim that some other Federal statute overrode the FAA. Sotomayor, with all respect, this Court has always said, look, is there any way to     the FAA. Is there a clear congressional command in the other statute? The FAA is clear that these agreements ought to be enforced. The NLRA isn't. It's clear in saying that concerted activity cannot be interfered with. That's right. But for the first 77 years, here's what everyone, including the Board, understood that to mean. You can be protected from dismissal or retaliation when you seek class treatment up to the courthouse doors or the doors of the arbitral forum. But once you're inside, you don't have an entitlement to proceed as a class, notwithstanding the FAA or Rule 23 or other Federal rules. D.R. Horton was the first to make that move, and that's a pretty radical move to say for the first time that the NLRA overrides those other statutes. And the reason you can't get there is that Section 7 doesn't say anything about arbitration or class or collective treatment, and unlike other statutes, Congress didn't delegate to the Board the ability to decide which pre-dispute arbitration agreements will be. Breyer, do we have to go into all this class action business? I mean, it seems to me that in each of these agreements, the worker is forced to agree that I will not proceed concertedly, that means jointly, just one other person joining my action with his, and going into arbitration and saying, do both together. And maybe there's some rule that forbids people from doing that in arbitration, the AAA or something, I've never seen it, and it also says you can't do the same thing in court. You have to go to arbitration, and then the two of you can't get together. So simplifying it to its extreme case like that, why can't we just say that's clearly against what labor law, since the 1930s, has said was an unfair labor practice. The employee cannot, the employer cannot impose such an agreement. That would be simple, clear, it would void our class action, not what I don't want to characterize it as a nightmare, but there is a problem there. Okay. What's wrong with that? Breyer, with all respect, the historical premise is just wrong. When you go back to 1935 and you come all the way through the cases, they summarize them as joint legal action or concerted legal activity. But that's only true if what you mean is the right to go to the forum and say, you know, this is what I'm saying. Of course, I haven't said you do the – I'm sorry, I wasn't clear, perhaps, but nothing in what I just said was that ordinary rules of the courts, like Rule 20, any other rule of the court, Rule 23, you have to be clear, whatever the rules are, they apply. And the only rule that wouldn't apply would be a rule that would say we're automatically going to enforce the agreement not to come here. You couldn't do that one, that would be a kind of trick. But aside from that, everything else would apply. But that's not going to get them where they want to go. Take Murphy Oil. Maybe it won't, that's too bad, but I mean, doesn't that resolve this case? I think we're on the same page. Take Murphy Oil. Does it resolve the case or not? Well, the employees attempted to file a class action. Murphy Oil didn't retaliate against them. Murphy Oil just came in and moved to compel individual arbitration, pointing to the Fifth Circuit's decision. And what is stopping the concerted activity is not that – which forum they choose. Whether it's court or arbitration, where you're stopping the concerted activity is in the very act of saying this can only be an individual arbitration, an individual court action. What your adversaries have stipulated to in resolving this question is if they can have collective activity in arbitration, according to their argument, it's harder for them to win. But this particular provision is illegal because it is removing collective activity from both forums, from any forum whatsoever. Justice Sotomayor, again, three quick points. One, they can't satisfy the clear congressional command test if you stack the NLRA up against the FDA. That's assuming that test applies in this situation. That's right, sir. Where a contract has been invalidated by statute. So second, even if you try to go to the savings clause, which this Court has never done in a case like this. Sotomayor, why would it even need to go there? Just read the NLRB? Because the NLRB on its face doesn't say anything about this. You've got to go beyond the text. You've got to say the board can interpret section 7, and five years ago when it made that move. Sotomayor, let's assume. Mr. Wall, I'd like you to finish your answer, but I have a question I'd like to get in before your time expires, if I could just note that. So just to quickly finish the answer, I think, again, the question assumes the conclusion, which is it assumes that when the board five years ago took the concerted activities clause and stretched it for the first time to cover your ability to go pursue the rights granted, collective procedures granted to you by some of their statute, it assumes that those procedures that it picked up, which in every other context, like under the FLSA, are procedural. It's somehow converted to be substantive and non-waivable, and that's the move the board can't make because it can't interpret the NLRB's ambiguity that way in the face of the FAA and Federal rules like Rule 23. So that's the move that was off the table. And if you understand section 7 to protect you from retaliation when you seek class treatment, but not to give you an entitlement to proceed as a class in the forum, then you're right. Everything fits together perfectly fine, and these arbitration agreements are at first Justice Alito. Maybe this would be a good time. I'm sorry, maybe it's a good time for Justice Alito, if you'd like to. Alito, I just wanted to know what the government's position is regarding the Norris-LaGuardia Act issue. Is it not before us? Is it so closely tied to the NLRA issue that it is appropriate for us to decide it? Did you have an opportunity to brief it? What's your position on this? I think both of those, Justice Alito. I think it's not before the Court, but frankly, I don't think it matters because I don't think it adds anything. The text is essentially identical, and both statutes for basically three-quarters of a century were understood to coexist comfortably with the FAA, and it's really only D.R. Horton that put them in tension by reading both section 7 and the equivalent sections of the Norris-LaGuardia Act to grant the employees something that those statutes had never been thought to grant them, and it's resolving that ambiguity in the face of the FAA that I think is a problem. As we think it's a problem. Roberts, Justice Kagan can proceed now. I take it that both you and Mr. Clement agree that if you had a discriminatory arbitration agreement, let's say an arbitration agreement that said that the employer will pay the arbitration costs of men but not women, that that would not be enforceable. Why not? So I think a couple of reasons, Justice Kagan. The first is, I think if that case came to the Court, I think we'd have no trouble concluding that the ADEA and Title VII and civil rights laws supply a clear congressional command. Okay. So if that's the case, and you're saying there can be a conflict between statutes and the Title VII would supply a clear congressional command, even though Title VII says absolutely nothing about arbitration. Well, again, I don't think it's a magic words test, and we agree with Petitioners on that. You can have a clear congressional command absent that. You just don't have it in section 7. You have an agency attempting to supply it. And the other thing I'd say is it's not a fundamental attribute of arbitration. Well, here's one understanding. May I continue? Sure. It's one understanding of Title VII says to the employer, you shall not discriminate. And section 7 says to the employer, you shall not interfere with concerted activities such as three guys joining together to bring a suit if they want to. Justice Kagan, it is not a fundamental attribute of arbitration to discriminate on the basis of race, age, or gender. It is a fundamental attribute of arbitration, and this Court said it three times, to pick the parties with whom you arbitrate. And our simple point is, this case is at the heartland of the FAA. It is, at best, at the periphery of the NLRA on the margins of its ambiguity, and you simply can't get there under the Court's cases. Thank you, Mr. Wall. Mr. Biffen. Mr. Chief Justice, and may it please the Court. The Board's rule here is correct for three reasons. First, it relies on long-standing precedent, barring enforcement of contracts that interfere with the right of employees to act together concertedly to improve their lot as employees. Second, finding individual arbitration agreements unenforceable under the Federal Arbitration Act Savings Clause, because they are legal under the National Labor Relations Act, gives full effect to both statutes. And third, the employer's position would require this Court, for the first time, to enforce an arbitration agreement that violates an express prohibition in another co-equal Federal statute. Mr. Griffin, if you can, I'm not sure I fully understand your position. Individuals can agree to arbitrate disputes so long as they allow, as long as the agreement allows collective arbitration, is that correct? No, Your Honor. It's a slight variation on that. The Board's position is individuals can agree to arbitrate individually so long as there is a forum in which they can proceed collectively. So it doesn't have to be arbitration, it could be judicial. Oh, okay, right. But if they agree to act, the agreement requires that they act individually, although, to arbitrate, but there is a collective arbitral forum, but that's all right. In other words, just they have to arbitrate. Whether they do it individually or collectively, you cannot restrict that. The Board's position is that, as this Court has said on multiple occasions, that the arbitral forum is the equivalent of the judicial forum for effectively vindicating statutory rights. So here, as has been mentioned, there are four people who are seeking to get paid in the Murphy-Rado case for work that they did. If the forum is available to them to proceed jointly and the employer agrees to have it done in arbitration, that's fine from the Board's standpoint. Okay. So the point is they can, in their arbitration agreement, waive the right to proceed collectively in court so long as they have the right to do it in arbitration. Because this Court has said on multiple occasions that those two forums are functionally equivalent for purposes of effectively vindicating the rights at issue, it's essentially like picking venue in two different Federal courts. I don't understand how that's consistent with your position that these rights can't be waived. It goes back, Your Honor, to the position the Board takes into account this Court's views with respect to the ability to effectively vindicate these rights in an arbitral forum. We have said that with respect to individual arbitration. Have we said that with respect to class arbitration? Well, Your Honor, we're talking about a rule here that doesn't just stop class or stop any kind of joint activity. It stops two people proceeding together. It stops collective. It stops class actions. So, or class arbitration. So, no. Excuse me, Justice Alito, a quick one. You say this rule means that three people, employees, can't go to the same attorney and say, please represent us and we'll share our information with you. We have three individual arbitrations, but you represent all three of us. They can do that. They could do that, Your Honor, but it doesn't. Well, that's collective action. But it's not the collective action that's protected here. The Act protects the employees' rights to proceed concertedly. Well, they're proceeding concertedly. They have a single attorney. They're presenting their case. It's going to be decided maybe in three different hearings. But it doesn't allow the employer to choose which type of activities the employees can engage in. Wait a minute. You said to Justice Kennedy, I didn't – I think I might have missed this. Smith, Jones, and Brown are three employees. Correct. Each believes that he has not enough overtime or something like that. And he goes to the same attorney, all three. And it wasn't exactly the same time. It wasn't exact – there are differences. So what they want to do is file a joint claim. They want to say, our employer violated the da-da-da because they did not pay us enough. Okay? They're not identical, but they're very similar. Now, can they go together to the arbitrator under this agreement? No. No. Okay. So the answer to Justice Kennedy was, they cannot go to the lawyer and have this brought in one action unless they just use one person. That's correct, Your Honor. Well, but that – but the question Justice Breyer asked is different than my question. My question is that many of the advantages of concerted action can be obtained by going to the same attorney. Sure, the cases are considered individually. But, you see, if you prevail, it seems to me quite rational for many employers to say, forget it, we don't want arbitration at all. I don't think you've done employees much – much of an advantage. In that event, you would have a judicial forum if the employer doesn't want arbitration. In fact – I fully understand that. But the point is, you are saying that the employers are now constrained in the kind of arbitration agreements they can have. They're constrained with respect to limiting employees' ability to act concertedly in the same way that from the beginning of the National Labor Relations Act, individual agreements could not be used to require employees to proceed individually in dealing with their employers. What about the position that the board – I think both Mr. Clement and Mr. Wall emphasized that for 70-odd years, the board was not taking the position that it is now taking, that it was not objecting to bilateral one-on-one arbitration. Well, with due respect to my colleagues, that's an inaccurate summary of the board's precedent, Your Honor. The board's precedent has always said that individual agreements that require employees to individually waive their right to proceed collectively are violations of the National Labor Relations Act. That's what this Court held in 1940 in National Liquorice. What do you do with the general counsel memorandum that said you can waive the right to file a collective lawsuit? With all due respect to the general counsel at the time, that memorandum was never adopted by the board as the law of the board and, in fact, was explicitly rejected in the Horton decision and subsequently in Murphy Oil. I'm curious about the point that's been made that the board doesn't allow class proceedings. There must be a reason – you must have some explanation for how that can be reconciled with your position, but I'd like to know what it is. Well, it's a misnomer to say that the board doesn't allow class proceedings, Your Honor. The way a proceeding under the National Labor Relations Act works is the board doesn't have any independent investigatory authority or ability to initiate suits on its own. What happens is charges are filed. Those charges are filed by employers, employees, individuals. They could be filed by a group of as many employees as you want. The general counsel of the board, acting through the regions, decides whether or not to pursue the complaint and then the general counsel proceeds in the public interest to litigate the case administratively. So it's not the type of proceeding that lends itself to the concept of class actions, but it doesn't stop as many employees as want to and, in fact, frequently the union will be filing a charge that's a representative charge in very much the same way that a class representative would be pursuing a class action in court. And the other question I have is how do you draw a distinction between an agreement precluding class arbitration and all of the other rules of civil procedure that limit the ability of employees to engage in collective litigation? Well, here, Your Honor, we actually have agreement with the other side. The board's rule does not require any modification to the class procedures in court. What the board's rule says is you can't preclude people from proceeding jointly by virtue of an unlawful agreement imposed upon them by their employer. But you say that what is the scope of the right to engage in concerted activity? Why, if that's the case, why would it not abrogate any limitation in rules of procedure that predated the enactment of that? Well, the board's position, Your Honor, is that employees have to take these provisions as they find them. So I'll give you an example. In your — in this Court's decision in Washington Aluminum, there were a group of employees who were faced with a frigid workplace. In response to those conditions, they walked out. That was in — and that activity was held to be protected. That was in 1962. Subsequently, in 1970, the Occupational Safety and Health Act was passed. After the Occupational Safety and Health Act was passed, people had a choice. They could either walk out if they were faced with unsafe conditions, or they could jointly file a petition or a claim or a complaint with OSHA. That was a subsequently enacted provision that allowed employees to choose a different path to address their workplace terms and conditions of employment. The same is true with the subsequently enacted rules, whether it's 216B of the Fair Labor Standards Act, whether it's Rule 23 of the Federal Rules of Civil Procedure. These are all means and mechanisms that were adopted subsequently that employees can choose to use if they're available. Our position is only that the — So the argument is that the — that restrictions in Rule 23 abrogate Rule — Section 7 because they were enacted later? No, that's not it at all, Your Honor. Well, then I don't understand your answer. The answer is people who have Section 7 rights are just like any other plaintiff, and the requirements of Rule 23 with respect to numerosity or typicality — Mr. Griffin, is this one way to think about the question? Of course Section 7 doesn't extend to the ends of the earth. If there are three employees who go out jointly rioting in the streets, they run up against anti-riot laws, and they go to jail just like everybody else. What Section 7 does and what Section 8 does is to establish a set of rules that deal with how employers can deal with employees. And one of the things that Section 7 and Section 8 say in concert, if you will, is that you have to have a set of rules that deal with the behaviors of concerted rights. And that's all you're saying here. That's entirely correct, Your Honor. And specifically Section 8A1 prohibits interference with the employee's exercise of the rights of the employee. You think all the rules apply. The rules of the forums apply. Absolutely. And both sides are in agreement on that. Yes. The question is whether you can resort to, can they stop you from resorting to administrative and judicial forums? That's correct, Your Honor. And in grievance arbitration, by the way, how — I just wonder, because that's very common, are there instances where — there will probably be a worker representative going to the employer, but are there instances where the grievance is a grievance that is shared by people, but not perfectly shared? So Jones, Smith, and Brown will go to the representative and say, Representative, please, let's go before the arbitrator, and you represent all three. Certainly, Your Honor. There are many instances where the union will take a grievance with respect to overtime that's not paid to multiple people on the same shift. This Court's decisions with respect to the Steelworkers Trilogy all involve arbitration situations that involve multiple parties representative. Let's say the arbitral forum says — the rules of the arbitral forum says you can proceed individually, but you can — and you can proceed collectively, but only if the class represents more than 50 people. Is that all right under your theory? That's a rule of the arbitral forum, and the employee takes the rules of the forum as they find them. So you have a right to act collectively, but only if there are 51 or more of you. What — no, Your Honor. What you have an opportunity to do is to try and utilize the rules that are available in the forum without the employer intervening through a violation — a prohibition that's violated by Section 7. No, no, no, the hypothetical — the Chief can protect his own question — the hypothetical is the contract says you have to have 50. Oh, I understood — I'm sorry. I misunderstood — The understanding of the question. Well, I misunderstood the question. I thought we were talking about the arbitral forum itself has rules as opposed to the arbitration agreement between the parties. No, the arbitral forum has rules, just like the Federal Rules of Civil Procedure. And what you're saying is, well, once you get into Federal court, of course you've got to follow the rules of the forum. And we have arbitral forums as well. And I just think — And I'm saying that those rules are equivalent, that you take — the employee takes the rules of the forum as they find them. What is prohibited here under the National Labor Relations Act is an agreement by the employer that's imposed that limits the employee's right to take the rules as they find them. No, no, okay. So it would be okay if the forum said that. It's not okay if there's an agreement between the employer and the employee that limits their right to proceed. So while the employer — well, and why can the arbitral forum enforce the rule that says, basically, you cannot act collectively if it's fewer than 50 people? Because the prohibition in the National Labor Relations Act, in Section 8A1, runs to employer interference, restraint, or coercion with respect to the rules, with respect to exercise of the rights under Section 7. It doesn't say anything about the forum's involvement. Okay. So the employer has to say, well, but most arbitration agreements tell you what the forum is, whether it's the AAA or something else. So if the employer-employee agreement says you shall arbitrate this under this particular arbitration forum, and those rules say we'll do collective arbitration, but only if you have more than 51 people, because we think it's more efficient to have a smaller number arbitrate individually, that would be okay under your position. Yes, Your Honor. And what if the rules of the arbitral forum say no class arbitration? Your Honor, it would be — it would be just as though, in the analogous circumstances, Congress said there were to be no class actions in court. The employee — our position is that the employee's right to proceed is in the forum under the rules of the forum. The thing that is prohibited — Well, if that's the — if that's the rule, you have not achieved very much, because instead of having an agreement that says no class — no class action, no class arbitration, you have an agreement requiring arbitration before the X, Y, Z arbitration association, which has rules that don't allow class arbitration. Well, the provisions of the National Labor Relations Act run to prohibitions against employers. Is that — is there any arbitral forum? I know the AAA allows class arbitration. The National Academy of Arbitrators filed a brief, amicus brief in this case, Your Honor, supporting the position that the Board took in Murphy Oil, and it addresses the circumstances under which, in both labor arbitration and employment arbitration, employees are able to proceed in joint, collective, representative actions. There's one anomaly here, and I think you agreed that the Fair Labor Standards Act, where the substantive right comes from, that under the Fair Labor Standards Act, which provides for an opt-in class proceeding, that right can be waived. Well, Your Honor, we don't agree with respect to employees who have National Labor Relations Act rights, who also have FLSA rights, that there can be a waiver of the right to proceed jointly. It's — if you imagine it in mathematical terms, there's a set of people who have rights under the Fair Labor Standards Act. There's a lesser-included subset of people who have rights under both the Fair Labor Standards Act and the National Labor Relations Act. And as to that lesser-included set, there's no ability to waive the right in an employer to proceed collectively. Do you have a view, Mr. Griffin, as to whether bringing a class action is itself concerted activity by a single-named plaintiff? Yes, Your Honor. That law is essentially unchallenged here, and the board's law is that if an individual takes action to initiate, to induce, or to prepare for group action, that that is concerted activity as understood under Section 7. And the board specifically held in Murphy Oil, and we've briefed this in our brief, that a class action fits within the notion of initiating, inducing, preparing for. In fact, the Lewis case involved an individual who filed the class action and then was joined immediately by a number of other plaintiffs. And each of these cases involves concerted activity. There isn't a question of concert here because there were four people involved in filing the Murphy Oil action. There were two involved in Morris, and as I said, Lewis was joined by others in that action. Counselor, do you have any idea of how many union contracts provide exclusively for arbitration of disputes, individual and collective? It is a fairly ubiquitous term in union collective bargaining agreements. And so is this the unusual case where the union hasn't negotiated that kind of contract? Well, this involves individual employees. There's no union present in these cases, Your Honor. And pursuant to Circuit City, while there was an issue up until that point whether or not the FAA applied to employment contracts, this Court has decided that. So now these individual cases are willing to stand. Involve non-union members. Yes, exactly. Thank you, counsel. Mr. Ortiz. Mr. Chief Justice, and may it please the Court. If I may begin by answering a little bit more fully, Justice Sotomayor's question at the end. Approximately 55 percent of non-union private employees have contracts that are covered by mandatory arbitration agreements, and that covers about 60 million people. Twenty-three percent of those employees have non-individual, sorry, non-joint, non-class, non-collective restrictions, which represents about 25 million employees. If I may, I would like to respond to a few points. If a decision in your favor would invalidate the 25 agreements covering 25 million employees? Yes, Your Honor. If I may respond to a few points of Mr. Wall's. There seems to be a belief on the employer's side that allowing employees to waive Section 20, Rule 23, Rule 20, and Section 16B rights under the Fair Labor Standards Act, Fair Labor Standards Act, except when the Section 7 of the NLRA is in the picture, somehow creates an anomaly. That is not the case, Your Honors. All these other Rule 20, Rule 23, and Section 16 create remedial mechanisms, but they create no substantive rights. Rule Section 7 of the NLRA, Section 2 of the North LaGuardia Act, on the other hand, creates substantive rights, but they create no procedural mechanisms. There's nothing really odd about not allowing employees covered by Section 7, or sort of coercing them in this way. Second, Mr. Wall suggested that Concepcion and Italian Colors actually control here. They do not. Concepcion, for example, concerns State law. This Court followed preemption analysis and was very concerned in particular about the application of the State law in that case. It was California's unconscionability doctrine. And this Court found that it was applied in a discriminatory manner which tended to target arbitration. That was the problem with it. Also, Your Honor, although this Court found that affecting an essential attribute of arbitration was important in that case, that is very different here as well. Collective arbitration is much more traditional in the labor employment context than it is in the consumer context. Mr. Wall. Breyer. Breyer. Is there anything wrong from your point of view, which taking this case in a very unsatisfactory way to everybody, except perhaps it's simple, is you just simply read the words, what the employer cannot stop is joint effort, like making a joint claim, nothing to do with class actions, just making a joint claim, resorting to administrative and judicial forums for the purpose of making that joint claim. Now, the contracts seem to be an employer effort to stop an employee from doing that, because they don't allow him to do that, either in administrative or judicial forums. Now, I suppose end of opinion, okay? Now, from your point of view, does that solve the case or does it just create a lot of problems? Is it totally out to lunch or what? No, Your Honor. I think that would absolutely solve the case correctly. Well, but of course, there's another statute that has either equally or planar language which says that arbitration agreements will be enforced according to their terms. Does it complicate the case to add that into it? It complicates it one step, but what the FAA gives, the FAA also takes away, Your Honor. That same provision of the FAA, section 2, actually reserves, creates an exception for contracts that, for contractual provisions that are illegal. And this Court has also said that there are two other doctrines that are legal. Well, that kind of begs the question. We're trying to figure out if this is illegal. You can't assume that that type of arbitration agreement is illegal, and therefore it's covered by a clause that prevents the enforcement of illegal arbitration agreements. Sure you can, Your Honor. Section 7 clearly prohibits this kind of behavior, and in Kaiserstein, this Court itself said that such contracts are illegal and cannot be enforced by a court. They easily fit within the meaning of the Savings Clause. Breyer, I mean, look, I quoted a statute, didn't I? Yes, Your Honor. The language clearly controls it. And the statute was passed after the Arbitration Act, wasn't it? Yes, Your Honor. And Justice Cardozo said, when, in a comparable context, we exclude cases where the contract is in contravention of a statute. And that's why Justice Kagan provided the example of the discrimination case. Yes. So I'm not quite ready to say it's more complicated. No, no. It's Your Honor, I'm sorry if I suggested that. The Section 2 of the FAA was taken, was not just inspired by the New York Arbitration Act, but was taken word for word from the New York Arbitration Act. And then Judge Cardozo in the New York Court of Appeals basically said, in interpreting that provision in the New York Arbitration Act, near the time when it was enacted by the New York State legislature, that it would not cover at all illegal agreements. And Congress was aware of that history of interpretation. In fact, the Verkowitz case was brought to its attention when it was considering the Federal arbitration. Where are you on my 50-employee hypothetical? Do you agree with the NLRB that it is all right to have a provision which says there is no class arbitration unless there are more than 50 people involved? The employer, Your Honor, cannot coerce employees into that forum unless there is an alternative forum available of, say, the courts, where fewer than 50 employees could proceed. Roberts, but is your answer, then, that you disagree with the position of the NLRB? Because I understood them to say that, yes, once you're in the forum, you have to abide by the rules of the forum. And one of the rules of the forum that I hypothesized is one that's saying you've got to have at least 50 people before you can have a collective action. Now, if it's an arbitration agreement, that means you are already out of the courts. So the question is, is that a valid agreement or not? Well, when you get to the arbitral forum, you are bound by the cause. But when an employer tries to coerce, by making a condition of continued employment, that employees agree to a set of arbitral rules that make collective action impossible and at the same time takes away the rights of the employees, that's what I'm trying to say is that there be at least 51 employees before you can have collective action. In other words, it's a rule like the Federal Rule of Civil Procedure, which says you cannot have a class action whenever you want to, but you have to satisfy certain rules, like numerosity. No, no. I'm sorry, Your Honor. Sorry, it's so complicated. No, no, no, no, no. But so long as there's an alternative available where a group of 50 of less than 50 people could pursue whether that's what's going to happen. No, there's no alternative available because you're agreeing to arbitrate. You're agreeing to go to the arbitral forum, and it has certain rules. The point is, no, you can't engage in collective action if there are fewer than 51 people. Then in our view, Your Honor, no, the employer could not insist on that. Sotomayor, let's assume for the sake of argument that the employer here has 49 employees. And he gives a contract to the employee that says you have to arbitrate with me in this forum that doesn't have class actions unless there are 50 more employees. That would be a different claim than involved here, wouldn't it? Yes, Your Honor, it would be. It would be the intent to interfere with collective action. But let's assume it's an Ernst & Young that has 5,000 employees. I don't actually know the number. But for the sake of argument, 5,000 employees, what would be wrong by choosing an arbitral forum that limits class actions to 50 people? Federal rules say that you have to have a class that's big enough in numerosity to warrant class treatment. And arguably, if there's only 20 or 25 employees, a judge could, using his or her discretion, say, no, I'm not going to have a class action with 25 people. No, no. But the difference, Your Honor, is that under the Federal rules, you can still have joint action with 2, 3, 4, 5 people up to 50. And as I was assuming the hypothetical from the Chief Justice, under the rules of the arbitral forum he was putting forward, it would be either 50 or more or nothing or 1. And no joint activity of any kind. No joint activity below 50. All right. That was the problem. So I'm sorry if I was not clear about that. So your understanding is correct. And I just wanted to make certain I understood that your position was different than the position of the NLRB on that. Thank you, Your Honor. And the right to — if the right to engage in concerted activity includes the right to have — to file a class action in Federal court, how can an agreement provide that — waive that right and require arbitration, even if arbitration is — even if class arbitration is allowed? Or can it not do that? Your Honor, under Section 7, as long as joint legal action is available in one forum, that would be — Why? Where do you get that out of the language of the statute? May I proceed, Your Honor? Your Honor, it's — it represents an accommodation, if you will, with this Court's jurisprudence where this Court has said in a series of cases that the arbitral forum is equivalent to the judicial forum. So as long as one can proceed in one or the other, there should be no Section 7 violation. Thank you. Thank you, counsel. Mr. Clement, you have 4 minutes remaining. Thank you, Mr. Chief Justice. Just a few points in rebuttal. First of all, I just want to emphasize that, as Justice Kennedy said, you do have the right to concerted activity in the sense that three or more employees could decide that they want to go to the arbitral forum, and then they would arbitrate individually, but they could have the same lawyer and the like. They also have other options. What about the confidentiality agreements, which I take it puts a damper on how jointly these people can proceed? Well, they can proceed very jointly before they get there. The confidentiality agreement is not going to take stop the same lawyer from thinking about the three cases in conjunction. But, Mr. Clement, usually, usually when you have a right, the fact that there is one way to exercise a right left over does not make it okay if we've taken away another 25 ways of exercising the right. You know, when we think about the First Amendment, we don't say we can ban leafleting because you can always write an op-ed. And the same thing applies here. The fact that there's something left over by way of concerted activity does not make it okay under Section 7 and Section 8 to deprive employees of many other means of protected activity. Well, Your Honor, I'm not sure you should blame me for that, because I understood the colloquy with Justice Alito. That's exactly their position. As long as there's an avenue for concerted activity open, that's good enough. And I did want to mention there's another avenue for concerted activity, which is the three employers, employees, rather, can go to the wage and hour division of the Labor Department, and the wage and hour division, if it thinks there's a problem, can bring an action that won't be subject to the arbitration agreement under this Court's decision in Waffle House. Sotomayor, these are related questions, which is, how does an employee with these confidentiality agreements, or even with this agreement in place, how are they able to bring a pattern or practice or disparate treatment cause of action? And explain to me why employers would prefer an arbitration of 100 different claims, let's say in a religious accommodation case, where half the arbitrators say, you must honor those 50 people's religious claims, and the other 50 arbitrators say, no, you don't have to. How are employers and employees helped with such a system? And how, with these individual arbitration claims that have become more recent in modern times, this is not, these bilateral arbitration agreements have not been the norm, they've been the norm in more recent times, when the Court said that we weren't going to recognize class actions in arbitrations, that's when employers jumped to the conclusion that class arbitration was the norm.  And I think the question is, how do you deal with this, but how do you deal with those two policy considerations? Let me try to deal with them, Justice Sotomayor. But let me first correct what I think is just a disagreement between the two of us, which is, I think, and this Court said as much in Italian Colors and Concepcion, bilateral arbitration is actually the only kind of arbitration there was until roughly the time of Basel. And then you started having the possibility of class arbitration. So the kind of arbitration that Congress was trying to protect in 1925 was bilateral arbitration. Sotomayor Well, it was bilateral commercial arbitration. Clement Okay, but again, this Court crossed that bridge in Circuit City. Now, when you get to, you raised a concern about what if you can only bring a pattern in practice case with, you know, more than one plaintiff. Well, you know, the parties really haven't briefed that, but that did come up a lot in Italian Colors, because the Second Circuit had a rule that said that you could only bring a pattern in practice case pursuant to a class action. And try as I might to say that that was a problem with effective vindication, I only got four votes. So the Court seemed to say that that wasn't a sufficient problem. Thank you, Your Honor. Roberts. Thank you, counsel. The cases are submitted.